**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **KRISTINA BEDWELL,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 16-0539-N** |
| | ) | |
| **NANCY A. BERRYHILL, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 405(g) Plaintiff, Kristina Bedwell, ("Bedwell" or "Plaintiff") seeks judicial review of an adverse social security ruling denying disability insurance benefits. (Docs. 1, 12). With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (See Docs. 15, 17). The parties moved to waive oral argument and their request was granted. (See Docs. 15, 18). After considering the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

## PROCEDURAL BACKGROUND

Plaintiff protectively applied for disability insurance beneifts income on June 25, 2013. (Doc. 12 at 1; Tr. 130-33). Plaintiff alleged a disability onset date of April 23, 2012. (Doc. 12 at 1; Tr. 130). Her application was

initially denied on October 1, 2013, after which she requested a hearing. (Doc. 12 at 1; Tr. 73-81). Plaintiff attended a hearing before an Administrative Law Judge ("ALJ") on January 28, 2015, and the ALJ rendered an unfavorable decision on May 5, 2015. (Doc. 12 at 1; Tr. at 12-57).

At the time of the administrative hearing, Plaintiff was thirty-seven years old with a high school diploma, three years of college courses, and previous work history as a police dispatcher and mail carrier. (Doc. 12-1; Fact Sheet). Plaintiff alleges she is disabled due to cervical and lumbar degenerative disc disease, obesity, PTSD, and depression. (*Id.*) On May 5, 2015, an ALJ denied benefits after determining that Plaintiff was capable of performing a reduced level of light work and, therefore, was not disabled. (Tr. at 19-26). Plaintiff requested review of the hearing decision, but the Appeals Council denied the request on August 25, 2016. (Tr. at 1-7).

Plaintiff asserts four grounds for error. (Doc 12) Defendant has responded to—and denies—that any error occurred. (Doc. 13, generally). The issues have been fully briefed and are now ripe for review.

## STANDARD OF REVIEW

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176,

1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))).  However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))).  " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, we must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons.  [The court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").  "In determining whether substantial evidence exists, [a court] must…tak[e] into

account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

Where, as here, the ALJ denied benefits and the Appeals Council denied review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. "[W]hen the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

# DISCUSSION

At step three of the sequential process, the ALJ found that Plaintiff had severe impairments of cervical and lumbar degenerative disc disease, obesity, post traumatic stress disorder (PTSD) and depression. (Tr. at 17). At step four, the ALJ found that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526)." (Tr. at 26). The ALJ summarized Plaintiff's medical history as follows:

> The claimant began having gradually worsening neck pain with numbness extending into her hands while working as a postal worker. She had a fainting spell at work in January of 2012. She was diagnosed with hypoglycemia but also started on depression medication (Exhibit 1F, 2F). She had a nerve study that did not show carpel tunnel syndrome. On April 30, 2012, the claimant had an MRI of the cervical spine that showed a small disc herniation at C5-6 and a small annular tear at C4-5 (Exhibits 4F, 12F). She had an epidural block on June 28, 2012 that did not provide much relief (Exhibit 6F). She was referred to Alabama Orthopedics and was seen there on July 5, 2012. She had a cervical discogram on July 24, 2012 that showed an annular tear at C5-6 and annular fissuring at C6-7 (Exhibit 7F). The Claimant underwent a cervical decompression and interbody fusion on September 4, 2012. After six weeks, she was reportedly doing very well and released to part time work at the post office with return to full time in one additional week. In December, she continued to complain of cervical pain at level 3/10 and numbness in her forearm so she was started on Neurontin and Zanaflex. X-rays showed good placement of the hardware and bone grafting material present. In January of 2013, she continued to complain of worsening neck pain so an MRI was done. The MRI showed the fusion plate from C5-7; a very subtle bulge at C3-4 with mild canal narrowing without foraminal stenosis; and a subtle bulge at C4-5 with mild central canal narrowing and no foraminal stenosis. She was then referred to pain management (Exhibit 10F). She began physical therapy at the end of January but

was discharged in April for non-compliance (Exhibit 11F). In June of 2013, she [had] an additional epidural steroid injection (Exhibit 14F).

The ALJ determined that "[t]he claimant has the residual functional capacity to perform a reduced level of light work as defined in 20 CFR 404.1567(b). She can lift and carry up to twenty pounds occasionally and ten pounds frequently. She can sit for at least six hours in an eight-hour day and stand/walk in combination at least six hours in an eight-hour day. She can frequently reach overhead bilaterally and con [sic] only occasionally climb ladders, ropes or scaffolds. She cannot work at unprotected heights. She is limited to simple, routine, repetitive tasks with no more than occasional contact with the public." (*Id*. at 19-20).

Plaintiff asserts the following grounds for error: (1) The ALJ erred in failing to give substantial weight, if not controlling weight, to the opinions of the treating physician, Dr. Kidd, (2) the ALJ erred in making an RFC assessment inconsistent with the evidentiary record, (3) the ALJ erred in giving greater weight to the opinion of a reviewing, non-examining psychologist than the opinion of the treating psychiatrist, Dr. Cummings, and (4) the ALJ erred in failing to properly assess Ms. Bedwell's pain and medication side effects in the RFC determination. (Doc. 12 at 2). The undersigned will address each contention of error in turn.

## A.    The Opinions of Plaintiff's Treating Physician

Plaintiff contends the ALJ erred in failing to assign substantial, if not controlling weight, to the opinions of Plaintiff's treating physician, Dr. Kidd.

Specifically, the opinions provided in Dr. Kidd's Functional Capacities Form and Clinical Assessment of Pain form, completed on January 14, 2015, which included an opinion that Plaintiff had a disability rating of 100% and that her pain was incapacitating. (Doc. 12 at 7-8; Tr. at 511-14). Plaintiff contends that while the ALJ summarized Dr. Kidd's opinions, she failed to provide reasons supported by substantial evidence to reject the same and further asserts that the opinion was consistent with the medical evidence of record. (Doc. 12 at 8-14). Defendant asserts there was good cause to diminish the weight assigned to the opinion of Dr. Kidd and points out that Dr. Kidd's opinions were indicated on check the box style forms with few remarks, which do not constitute substantial evidence. (Doc. 13 at 11).

"In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)).

A treating physician's opinion generally is entitled to "substantial or considerable weight." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "That is so because treating sources are likely in a better position 'to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'" *Tavarez v. Comm'r, Soc. Sec.*, 638 F.App'x. 841, 846 (11th Cir. 2016) (quoting 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, an ALJ may give a treating physician's opinion less weight when "good cause" exists to do so. *Winschel v. Comm'r, Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Good cause to apply less than controlling weight to a treating doctor's opinion exists when: (1) the treating physician's opinion was not bolstered by the evidence, (2) evidence in the record supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004); *see also Martinez v. Acting Comm'r, Soc. Sec.*, 660 Fed. Appx. 787, 791 (11th Cir. 2016). Regardless, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam).

According to the determination, the ALJ diminished Dr. Kidd's opinion because it was not consistent with Plaintiff's treatment history and the medically acceptable diagnostic testing contained in the record. (Tr. at 24). More specifically, with regard to Dr. Kidd's opinion the ALJ stated as follows:

> Huey Kidd, D.O., the claimant's primary care physician, completed a Clinical Assessment of Pain and Functional Capacities Form on the claimant's behalf on January 14, 2015. Dr. Kidd indicated that the claimant experiences pain present [sic] and found to be incapacitating, physical activity increases the pain to the extent that medication and/or bed rest is necessary, and that she is restricted from the work place and unable to function at a productive level. He indicated that she has underlying conditions associated with the pain she experiences (Exhibit 20F). Dr. Kidd indicated that the claimant can only occasionally lift and carry up to ten pounds and cannot use her hands for simple grasping, pushing or pulling, or for fine manipulation. She cannot use her feet to operation of foot controls and should be restricted from working at unprotected heights or around moving machinery. He gave the claimant a 100% disability rating (Exhibit 21F). Little weight is assigned to Dr. Kidd 's opinions as his opinions are not consistent with the claimant's treatment history and the medically acceptable diagnostic testing contained in the record. The claimant's latest imaging tests show good placement of her fusion hardware with only minimal bulges in her cervical spine. There is no surgical intervention that has been recommended at this time. She has significant limitations but not to the degree indicated by Dr. Kidd. Dr. Kidd's own treatment notes do not show any significant musculoskeletal problems. The only notes regarding a musculoskeletal assessment are from September 14, 2013 and show the assessment to be "normal." His treatment notes do not show any range or motion, strength, or reflex testing and no gait analysis (Exhibits 16F, 18F).

(*Id.* at 23-24). Plaintiff argues that (1) her medical history substantiates Dr. Kidd's opinion, (2) the ALJ improperly discredited Plaintiff's subjective complaints of pain[1], and (3) the ALJ's rational for diminishing the weight assigned to Dr. Kidd based on a lack of recommendation for further surgical

---

[1] The ALJ's assessment of Plaintiff's credibility will be addressed herein below.

intervention ignored Plaintiff's past surgical history. (Tr. at 8-14). In support of her position, Plaintiff points to the history of her relationship with Dr. Kidd and Dr. Kidd's ability to review and rely on the medical records of other physicians and specialists who treated Plaintiff while she was under Dr. Kidd's care. Plaintiff contends that the ALJ minimized Plaintiff's conditions and the efforts of the physician's who tried to alleviate Plaintiff's symptoms by determining that Dr. Kidd's opinions were not consistent with Plaintiff's treatment history and diagnostic testing. Plaintiff also argues that the ALJ was incorrect in stating that Dr. Kidd's own treatment records do not show any significant signs of musculoskeletal problems as evidenced by the MRI and cervical discogram findings as well as Dr. Kidd's treatment notes which indicated "neck pain radiating moderate down to arm (Tr. at 445) and "neck pain in trapezius" (Tr. 486).[2]

While Plaintiff points to multiple medical records that may support a conclusion contrary to the ALJ's assessment of the medical evidence, this Court is not free to re-weigh the evidence. *See Winschel*, 631 F.3d at 1178. Rather, this Court is tasked with determining only whether the ALJ's findings were based on substantial evidence. *Id*. In that respect, it is clear that the ALJ considered Plaintiff's surgical treatment and post-surgical care as summarized in his determination. As noted by the ALJ, it is also evident that six weeks post her cervical fusion, Plaintiff was released to return to work part-time and at seven weeks, she was released to return to work full

---

[2] The referred to language is located in the "history of present illness" category.

time. (Tr. at 24, 338). Following her surgery, no additional surgical intervention was recommended, Plaintiff worked until 2014 (Tr. at 47, 434-35), and despite her complaints of subjective pain, she has undergone only routine medical care, consisting mostly of pain medication in the two years leading up to Dr. Kidd's completion of the subject pain and functionality assessment.[3] Further, as indicated by the ALJ, latest imaging tests[4] showed good placement of her fusion hardware with only minimal bulges in her cervical spine and Dr. Kidd's own musculoskeletal assessment dated September 14, 2013, was "normal". (Tr. at 24, 498). Finally, despite his opinions as to Plaintiff's severe physical restrictions, the ALJ correctly noted that Dr. Kidd's treatment notes do not show any range or motion, strength, or reflex testing or gait analysis to substantiate the same. These facts establish substantial evidence that constitutes good cause to diminish the weight assigned to Dr. Kidd's medical opinion. Further, the ALJ articulated all of the reasons that he discounted Dr. Kidd's opinion, i.e., a lack of consistency with Plaintiff's treatment history and the medically acceptable diagnostic testing, imaging studies which showed good placement, the lack of recommendation for further intervention, and a contradiction to Dr. Kidd's own treatment notes which do not show any significant musculoskeletal

---

[3] Plaintiff's last visit with Dr. Revels was in January 2013 (Tr. at 342), and she did not attend follow up visits with Lemak Sports Medicine after January 2013 (Tr. at 266-67), or Southside Pain Specialists after June, 2013 (Tr. at 433-41). (Doc. 13 at 12).
[4] Plaintiff also had a normal neurological exam (Tr. at 434-35), and a post-surgical MRI that revealed no significant pathology that would cause parathesia in Plaintiff's arms (Tr. at 267). (Doc. 13 at 12).

problems. (Tr. at 24). As such, despite Plaintiff's assertions to the contrary, this Court finds that there was good cause to assign Dr. Kidd's opinion little weight. As a result, Plaintiff's assertion that Dr. Kidd's opinion should have been given substantial or controlling weight is without merit.

## B. Substantial Evidence

Plaintiff's second assignment of error is that the ALJ failed to provide an explanation supported by substantial evidence linking the RFC assessment to the evidence of record. In support of her position, Plaintiff argues that the ALJ mischaracterized Plaintiff's treatment as "routine medical care" with "no outstanding recommended surgical interventions" and failed to consider any residual effect of Plaintiff's surgical fusion including her pain and medication side effects. (Doc. 12 at 15).

"The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Social Security Ruling 96-8p, *Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184, *3. The Court notes that the ALJ is responsible for determining a claimant's RFC. 20 C.F.R. § 416.946 (2015). That decision cannot be based on "sit and squirm" jurisprudence. *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984). However, the Court also notes that the social security regulations state that Plaintiff is responsible for providing evidence from which the ALJ can make an RFC determination. 20 C.F.R. § 416.945(a)(3).

After summarizing Plaintiff's medical history, assigning weight to the relevant physicians, summarizing Plaintiff's testimony, and assessing Plaintiff's credibility, the ALJ explained his RFC finding as follows:

> The claimant's medically determinable impairments are expected to cause pain and severe functional limitations. The claimant has demonstrated sufficient impairment severity, via the medical evidence of record and reduced level of activities of daily living, to establish an inability to work beyond the light exertional level; however, the claimant's allegations of disabling symptomatology are not credible. She has had only routine medical care without any recent hospitalizations and no outstanding recommended surgical interventions. The clinical exams do not reveal symptoms consistent with significant restrictions beyond those accommodated in the her [sic] residual functional capacity. The objective medical evidence, the appropriately weighted medical opinions, and the claimant's subjective complaints during the relevant period when taken in proper context support the claimant's residual functional capacity assessment. In view of all of the factors discussed above, the limitations on the claimant's capacity contained in her residual functional capacity are warranted, but no greater or additional limitations are justified.

(Tr. at 24). While Plaintiff contends that the ALJ failed to provide an explanation as to Plaintiff's RFC determination, the ALJ's opinion clearly articulates the considerations the ALJ made in determining the RFC and the reasons for such a determination. Moreover, as discussed above, the ALJ considered all of Plaintiff's treatment and did not err in diminishing the weight assigned to Dr. Kidd's opinions. As such, the fact that the ALJ's RFC is incompatible with Dr. Kidd's opinion fails to establish that the RFC was not based on substantial evidence. Accordingly, the ALJ did not err in determining Plaintiff's RFC or by failing to articulate the rationale for his

RFC finding and, therefore, Plaintiff's second assignment of error is without merit.

### C. The Opinions of Dr. Cummings

Plaintiff contends the ALJ erred in giving greater weight to the opinions of a reviewing, non-examining psychologist than the opinion of her treating psychiatrist, Dr. Cummings. (Doc. 12 at 15). Plaintiff was treated by Alabama Psychiatric Services from April 2, 2013 to January 21, 2015. (Doc. 12 at 16; Tr. at 426-29, 443, 447, 517-19). From April 2, 2013, to March 2014, Plaintiff was treated by Dr. Welch. (Tr. 479-83). From October 7, 2014 to January 21, 2015, Plaintiff was treated by Dr. Cummings. (Tr. at 477, 517-518). Plaintiff did not receive treatment from March 4, 2014 to October 7, 2014.

As discussed herein above, a treating physician's opinion generally is entitled to "substantial or considerable weight." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "That is so because treating sources are likely in a better position 'to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'" *Tavarez v. Comm'r, Soc. Sec.*, 638 F.App'x. 841, 846 (11th Cir. 2016) (quoting 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However,

an ALJ may give a treating physician's opinion less weight when "good cause" exists to do so. *Winschel v. Comm'r, Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Good cause to apply less than controlling weight to a treating doctor's opinion exists when: (1) the treating physician's opinion was not bolstered by the evidence, (2) evidence in the record supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004); *see also Martinez v. Acting Comm'r, Soc. Sec.*, 660 Fed. Appx. 787, 791 (11th Cir. 2016). Regardless, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam).

On September 19, 2013, Joana Koulianos, Ph.D. performed a review of Plaintiff's medical records and opined that Plaintiff had mild restriction in activities of daily living; moderate restrictions in maintaining social functioning; moderate restriction in maintaining concentrations, persistence or pace. (Tr. at 24, 58-71). The ALJ assigned great weight to the opinion of Dr. Koulianos because "her opinion is well-supported by medically acceptable clinical techniques and is consistent with the other substantial evidence in the claimant's case record including the claimant's treatment history." (Tr. at 23).

On January 21, 2015, Dr. Cummings completed a medical source statement indicating that Plaintiff had mental limitations including a

"marked" limitation in Plaintiff's ability to interact appropriately with the public, supervisors or coworkers and noted Plaintiff "has severe symptoms of posttraumatic stress disorder with panic disorder and social anxiety that prevents her from being employed in any capacity at this time." (Doc. 12 at 16; Tr. 516).

The ALJ summarized the opinion of Dr. Cummings after which he stated as follows:

> Little weight is assigned to the opinions of Dr. Cummings, as a treating physician his opinions are credible; however, great weight is not assigned as the opinions are not consistent with the claimant's treatment history. The claimant's treatment notes reflect that she has done better with medication. Her mental status notes do not reflect disabling symptomology. She is noted to have "good appearance, a cooperative attitude, normal psychomotor, appropriate affect, rational thoughts, no loose association, normal thought content, no suicidal or homicidal ideation and to be alert" although she is sometimes described as depressed or anxious throughout her treatment notes (Exhibits 13F, 15F, 17F, 23F). She has required no psychiatric hospitalizations or commitments.

(Tr. at 23). Plaintiff submits the ALJ erred by stating in a conclusory manner that Dr. Cummings' opinion "is not consistent with the claimant's treatment history", however, Plaintiff fails to acknowledge that the ALJ went on point out several examples of inconsistencies between Dr. Cummings' medical assessment and Plaintiff's treatment records from Alabama Psychiatric Services.[5] Plaintiff additionally contends that Dr. Cummings' opinion is consistent with his own treatment note of January 7, 2015. (Doc. 12 at 17). While such a consistency may not support the ALJ's overall

---

[5] Exhibits 13F, 15F, 17F, are 23F all records from Alabama Psychiatric Services.

determination, it does not override the substantial evidence of inconsistent treatment notes cited by the ALJ.

Conversely, Plaintiff argues that the ALJ erred in assigning great weight to the opinion of Dr. Koulianos because her review did not include Plaintiff's treatment records of Dr. Welch dated March 4, 2014, or any of Dr. Cummings' treatment records. While Plaintiff is correct that Dr. Koulianos reviewed Plaintiff's records in September 2013, prior to Plaintiff's additional treatment, it is also evident that the ALJ considered all of Plaintiff's treatment notes, including the later treatment notes of Dr. Welch and Dr. Cummings, in determining that Dr. Koulianos' opinion was consistent with the record as a whole. Moreover, Plaintiff does not argue that there was a significant change in Plaintiff's conditions or treatment post Dr. Koulianos' review such that her opinion failed to consider additional symptoms or treatment that would make her opinion inconsistent with all of Plaintiff's treatment records, including those which were not reviewed prior to her opinion being rendered. Rather, Plaintiff argues that Dr. Koulianos' opinion is inconsistent with Dr. Cumming's medical assessment. However, as discussed above, the ALJ properly discredited Dr. Cumming's opinion based on substantial evidence. [6]

---

[6] If the ALJ assigned great weight to a physician whose opinion was consistent with the record as a whole and little weight to a physician whose opinion was inconsistent with the record as a whole, it is axiomatic that that the opinions of each of those physicians would be inconsistent with each other. Therefore, such a contradiction, alone, does not substantiate that an error occurred.

For the reasons set forth above, the ALJ did not err in assigning greater weight to the opinions of Dr. Koulianos than the opinions of Dr. Cummings because there was good cause to diminish the weight assigned to Dr. Cummings and substantial evidence to support the great weight assigned to Dr. Koulianos.

### D.    Pain Assessment

Plaintiff asserts that the ALJ erred in failing to properly assess Plaintiff's pain and medication side effects and, therefore, the ALJ's provided explanation for discrediting Plaintiff's testimony relating to her pain is not based on substantial evidence.  (Doc. 12 at 19).

Pain (and other symptoms) are subjective phenomena not amenable to objective measurement. See 20 C.F.R.§ 416.928. Therefore, a claimant who alleges disabling pain must establish:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Dyer v. Barnhart*, 395 F.3d 1206, 1210-11 (11th Cir. 2005); see 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.929. "A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability."  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  If a claimant satisfies these criteria, an ALJ must explain the reasons for discrediting the claimant's allegations of subjectively

disabling symptoms. *Dyer*, 395 F.3d at 1210-11. "It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence." *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).

In assessing the credibility of an individual, the following factors should be considered: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medications used to alleviate pain or other symptoms; (5) treatment other than medication, received for relief of pain or other symptoms; (6) any measures, other than treatment, used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also SSR 96-7p.

In support of Plaintiff's position that the ALJ's articulated reason for discrediting Plaintiff's subjective testimony is not based on substantial evidence, Plaintiff relies strongly on the medical opinion of Dr. Kidd found in the Clinical Assessment of Pain Form. However, as discussed herein above, there was substantial evidence establishing good cause on which the ALJ relied in assigning less than controlling weight to Dr. Kidd's opinion. For the

same reasons, there was substantial evidence on which the ALJ relied in discrediting Plaintiff's subjective complaints of pain. Further, as quoted in paragraph B above, the ALJ articulated the reasoning for finding Plaintiff to be less than credible, i.e., because of Plaintiff's only routine medical care without hospitalizations or recommended surgical interventions and a lack of symptoms consistent with significant restrictions. (Tr. at 24). Despite Plaintiff's position to the contrary, the record contained substantial evidence on which the ALJ relied in discrediting Plaintiff. Namely, Plaintiff's medical history including objective clinical assessments, a lack of recommendation for further medical intervention, Plaintiff's non-compliance with therapy, and Plaintiff's being released to return to work full time without restrictions following her surgical fusion, all of which the ALJ articulated in his determination. As a result, there was substantial evidence in the record on which the ALJ relied in assessing Plaintiff's credibility and the ALJ did not err in finding Plaintiff to be less than credible.

## CONCLUSION

Plaintiff has raised four claims in bringing this action and all are without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be

**DISMMISSED**.  Judgment will be entered by separate Order.

DONE this 9th day of August 2017.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**